UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALFONSO                                    CIVIL ACTION

VERSUS                                     NO: 11-2749

UNITED STATES OF AMERICA                   SECTION: "J" (2)

### ORDER AND REASONS

Before the Court are Defendant the United States of America's **Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Rec. Doc. 40)**, Plaintiff Joseph Alfonso, IV's opposition thereto **(Rec. Doc. 41)**, Defendant's reply to same **(Rec. Doc. 46)**, and Defendant's Supplemental Memorandum in Support of its motion **(Rec. Doc. 58)**. The motion was set for submission on March 13, 2013, on the briefs. The Court, having considered that motion and memoranda of counsel, the record, and the applicable law, now finds that Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

In this civil action, Plaintiff sues Defendant, the United States of America, for injuries he incurred in a car accident.

1

Plaintiff alleges that the accident was caused by work performed by members of the Louisiana National Guard (the "Guard"), whose activities following Hurricane Katrina caused the accumulation of mud on a roadway.  Plaintiff's complaint alleges the following facts. On or about November 15, 2005, Plaintiff was operating his pickup truck eastbound on Louisiana Highway 39 in St. Bernard Parish near Milepost 901.82.[1]  He encountered an enormous amount of slippery mud on the highway and lost control of the vehicle, from which he was ejected after the vehicle left the highway.[2] As a result of the accident, Plaintiff's truck was damaged, and Plaintiff sustained injuries to his mind and body, including a herniated disc in his back for which he has undergone surgery.[3] Plaintiff also alleges that as a result of the accident, he has sustained and/or will sustain fear of dying, pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, medical expenses, loss of income, loss of earning capacity, and property damage.[4]

Plaintiff's claim for money damages against the United

---

[1] Rec. Doc. 1, at 2, ¶ IV.

[2] Rec. Doc. 1, at 2, ¶ V.

[3] Rec. Doc. 1, at 2, ¶ VI.

[4] Rec. Doc. 1, at 2, ¶ VII.

States is brought pursuant to the Federal Tort Claims Act ("FTCA").[5] Plaintiff alleges that he exhausted his administrative remedies before filing suit.[6] Plaintiff asserts that Defendant is responsible for the Guard's tort liability in this case, and that the Guard is responsible for Plaintiff's injuries. Specifically, Plaintiff alleges that the Guard had established a temporary base immediately adjacent to the accident site at St. Bernard High School, where dozens of heavy equipment vehicles were stationed.[7] He alleges that as part of its deployment, the Guard carried multiple truckloads of mud and/or dirt across Highway 39, which resulted in the accumulation of mud that caused the accident. Plaintiff alleges that it is the accumulation of mud, along with rain on the morning of the accident, that created the hazard that led to his accident.[8] Plaintiff filed the instant lawsuit seeking recovery for his injuries on November 4, 2011.

Plaintiff filed a lawsuit based upon the same accident in state court on October 13, 2006. Plaintiff asserts that the

---

[5] Rec. Doc. 1, at 1, ¶ III.

[6] Rec. Doc. 1, at 3-4, ¶ XII.

[7] Rec. Doc. 1, at 2, ¶ VIII.

[8] Rec. Doc. 1, at 3-4, ¶ VIII.

State of Louisiana (the "State") has consistently taken the position in discovery in the state court action that the United States and the State are two separate entities and that the State has no knowledge of what activities the Guard was conducting at the time and place of the accident. Thus, he asserts that the State's position in the state court action precludes a finding in this action that the United States was acting as a representative of the State.[9] Plaintiff avers that discovery in the state court action has yet to reveal whether the Guard was acting in its federal or state capacity at the time of the accident. Thus, although he argues in the state court action that the Guard was acting in a state capacity, he argues in the alternative, in the instant action, that the Guard was acting in a federal capacity.[10]

In the state court action, Plaintiff sued the State Department of Transportation and Development ("DOTD") and the Military Department.[11] The Louisiana Military Department removed the case to this Court on July 19, 2007. Thereafter, the Court

---

[9] Rec. Doc. 1, at 4, ¶ XIII.

[10] Rec. Doc. 1, at 5, ¶ XV.

[11] The passenger in Plaintiff's pickup truck also sued in state court, see Melerine v. State of Louisiana, Civ. Action No. 07-3867, Rec. Doc. 1-2, which case was consolidated with Plaintiff's state court action after both suits were removed to this Court, id., Rec. Doc. 4.

granted Plaintiff's motion to remand.  The Court found that DOTD's failure to join in or consent to the removal was fatal to the removal procedure and that the removal was untimely.  The Court specifically stated that it did not answer the question of whether federal subject matter jurisdiction existed.  <u>Alfonso v. Military Dep't</u>, No. 07-3778, 07-3867, 2007 WL 4114438, at *7 (E.D. La. Nov. 15, 2007).  At present, several years after the Court remanded that case back to state court, said state court litigation is ongoing. After the instant federal lawsuit against the United States was filed on November 4, 2011, it was transferred to this Section as a matter related to Civil Action No. 07-3778.

On April 17, 2012, Defendant filed a Motion to Dismiss for Lack of Jurisdiction with the Court.[12] After a status conference with the parties, the Court allowed the parties to engage in limited jurisdictional discovery before hearing Defendant's motion.[13] On June 20, 2012, after the parties had completed discovery, the Court heard oral argument on Defendant's motion. After hearing the parties' arguments, the Court determined that certain information was still necessary to make a finding as to

---

[12] Rec. Doc. 11.

[13] Rec. Doc. 21.

5

the Court's subject matter jurisdiction. Therefore, the Court denied Defendant's motion without prejudice and ordered that Plaintiff issue a subpoena to the State of Louisiana, ordering the state to turn over any orders issued to the Guard during November 2005.[14] Likewise, the Court also ordered Plaintiff to submit a proposed order to the Court requesting these same documents from the United States.[15] Plaintiff complied with the Court's order on June 26, 2012, and on June 28, 2012, this Court ordered the United States to produce "all orders related to activities of the LA National Guard that relate in any way to the work that was being done in St. Bernard Parish on or around November 15, 2005, on or near Louisiana Highway 39 (mileposts 900-902)."[16]

On February 26, 2013, after completing the aforementioned discovery, Defendant refiled its Motion to Dismiss for Lack of Jurisdiction. Plaintiff responded on March 5, 2013, incorporating into its response the same arguments that it raised in its opposition to Defendant's original motion. Defendant replied on March 12, 2013. On April 16, 2013, Defendant also filed a

---

[14] Rec. Doc. 27.

[15] Rec. Doc. 27.

[16] Rec. Doc. 29.

Supplemental Memorandum in Support of its Motion to Dismiss, noting that the Guard had produced additional documents that were relevant to the work performed in St. Bernard in November 2005.

## THE PARTIES' ARGUMENTS

Defendant moves the Court to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under the FTCA. Defendant argues that because its liability under the FTCA is analogized to that of a private individual in like circumstances under state law, and because the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("the LHSEADA" or "the Act") immunizes individuals from tort liability based on disaster-recovery activities, the Court lacks subject matter jurisdiction over Plaintiff's claim. Defendant argues that the three elements required for it to invoke the LHSEADA immunity are met in this case.  First, it argues that the Guardsmen alleged to be at fault were under Title 32 federal status working during a declared state of emergency, and they were under the control of a state military officer, such that a private individual in like circumstances would be immunized under the LHSEADA.  Second, Defendant avers that the Guardsmen were engaged in "emergency preparedness activities," within the meaning of the Act, at the time of the alleged tort.  Third, Defendant argues that there is

7

no allegation that the Guardsmen alleged to be at fault failed to comply with the rules and regulations of LHSEADA or were otherwise engaged in willful misconduct.  Because it is immunized under the FTCA, based on the Louisiana statute, Defendant argues that the Court lacks subject matter jurisdiction and should dismiss Plaintiff's claim. In support of its arguments, Defendant points to the declaration and deposition testimony of Col. Douglas Mouton, the Commander of the 225th Engineering Group, the search declaration of Master Sergeant Den Davis, the deposition testimony of John Rahaim, Jr. ("Mr. Rahaim"), Deputy Director of the St. Bernard Department of Homeland Security and Emergency Preparedness, the deposition testimony and journals of Robert Turner ("Mr. Turner"), the Regional Director of the Southeast Louisiana Flood Protection Authority, and various Fragmentary Orders issued by the Guard in November 2005.

In addition to the aforementioned arguments, Defendant also directly addresses arguments that it anticipates Plaintiff will raise. In particular, Defendant asserts that any argument that Plaintiff makes regarding the timing of the operations is off-base. Specifically, Defendant contends that in this instance, any work that the Guard performed was in direct response to Hurricane Katrina and, therefore, fits into the definition of emergency

preparedness under the statute. Defendant argues that Hurricane
Katrina provides the "particular emergency" that is necessary for
the statute to be applied and, thus, Plaintiff's arguments about
a lack of a temporal connection between the accident and the
disaster are without merit. In support, Defendant point to case
law in which courts have found that post-Katrina work that took
place after this Plaintiff's accident constituted emergency
preparedness activity under the LHSEADA or similar statutes.
Furthermore, Defendant asserts that in Plaintiff's opposition to
its first motion to dismiss, Plaintiff argued that Defendant must
present proof that the Guard's actions were directly related to
recovery from the storms, and not in anticipation of future
unnamed disasters. Specifically, Defendant asserts that this
Court need not distinguish between whether the Guard was
performing levee repair work versus levee improvement work, i.e.
raising the levee higher than pre-Katrina heights. Defendant
contends that any work that the Guard was performing on the
levees at this time, all of which would have caused them to move
large amounts of dirt, was in direct response to Hurricane
Katrina. Therefore, Defendant contends it was assuredly the type
of emergency work contemplated by the statute. In general,
Defendant alleges that the Guard was moving debris from roadways

and from the levees.

In Plaintiff's first opposition (which was incorporated into his renewed opposition), he argues that the Court has subject matter jurisdiction under the FTCA.[17]  He contends that immunity under the LHSEADA is an affirmative defense, which Defendant has not proven.  Specifically, he argues that Defendant has not proven which Guardsmen were working in the area of the accident and whether those Guardsmen were conducting activities protected by the Act. Plaintiff cites (1) a videotape filmed the day after the accident that allegedly shows the battalion numbers of Guard vehicles deployed to the nearby area, and (2) the deposition testimony of Col. Douglas Mouton that refers to two specific battalions distinct from the battalions shown in the videotaped footage. Plaintiff also notes Col. Mouton's testimony concerning a videotape and maps of the area, which depict a canal flowing parallel to Highway 39, which canal leads to a pumping station located directly across the highway from St. Bernard High School.[18]  Plaintiff argues that considering the scant evidence

---

[17]  Here, the Court is specifically referring to the arguments that Plaintiff made in the first opposition that was submitted to the Court in conjunction with Defendant's original motion to dismiss. That opposition is Record Document 22.

[18]  This canal is referred to as the Arpent Canal. A nonfederal levee runs along this canal to the north of Highway 39. The pumping station nearby is called the E.J. Gore Pumping station. Defendant has noted that many of the Guard's fragmentary orders refer to this as pumping station #5.

in the record, it is more likely than not that the Guard was performing canal work and/or pumping station maintenance at the time of the accident, as Highway 39 had been clear of debris for nearly two months at the time of the accident.[19]

Plaintiff emphasizes that Defendant cannot claim that every Guard activity in the vicinity of the accident was in response to Hurricane Katrina without offering supporting proof, but rather, Defendant must show with specificity what it was doing and how those activities related to an emergency response.  Plaintiff argues that the fact that a state of emergency was in effect at the time of the accident is not a decisive factor, nor is it relevant. Instead, Plaintiff contends a close temporal connection is required between the disaster and the activity at issue for immunity under the Act to be implicated.  In this case, Plaintiff argues that his accident occurred 78 days after Hurricane Katrina's landfall. Plaintiff asserts that at that time many Louisiana citizens had returned to their normal lives and debris had been cleared.  Thus, Plaintiff asserts that the Guard's work is temporally removed from the disaster.  In summarizing his argument that the LHSEADA does not apply in this case, Plaintiff

---

[19] Defendant's second Motion to Dismiss addressed this contention by noting that debris was also being removed from the levees in the area of the accident.

argues that Defendant "has failed to prove a specific response with a specific temporal connection to a specific emergency that caused the injuries in dispute."[20]

Furthermore, in Plaintiff's second opposition, he proposes two additional arguments against Defendant's motion.[21] First, Plaintiff contends that Defendant has not done enough to prove its case. Specifically, Plaintiff asserts that during the process of discovery Defendant was made aware of multiple guardsmen who it could have deposed in order to find out more specific information, yet it chose not to do so. Plaintiff argues that there is sufficient evidence in the record to indicate that some orders that were issued by the Guard should be recoverable and, therefore, since Defendant has not produced those records or deposed those other individuals, the Court should take an adverse inference against the Defendant. Second, Plaintiff argues that the evidence that is in the record does not show that the Guard was participating in debris removal, but instead, proves that the Guard was actually tasked with improving the nonfederal levees in St. Bernard Parish by raising them above their pre-Katrina

---

[20] Rec. Doc. 22, at 11.

[21] Here, the Court is specifically referring to the arguments that Plaintiff makes in his second opposition; the opposition to the instant motion to dismiss.

heights. Plaintiff argues that (1) such activity is outside of the scope of emergency preparedness (and/or the Guard's orders), and (2) that the activity was not associated with any specific disaster, but rather, was looking forward to an unnamed disaster and, therefore, not included under the immunity statute.

In addition to these arguments, Plaintiff spends the latter half of his first opposition arguing that the LHSEADA is unconstitutional under both the United States and Louisiana Constitutions.[22]  In providing background for his argument, Plaintiff reiterates that the Guardsmen whose activities allegedly caused his accident were in a Title 32 "hybrid status" in which the federal government had specifically assumed what was traditionally the liability of the State for the negligent acts of Guardsmen.  Although Defendant argues that the FTCA requires its liability to be analogized to that of a private party under state law, Plaintiff avers that to treat the United States as a private party in this Title 32 scenario defeats the intent of the Louisiana Legislature and Congress to have the federal government

_____

[22] On April 23, 2012, Plaintiff filed a notice of constitutional challenge, Rec. Doc. 12, and on April 26, 2012, the Court certified to the Attorney General for the State that the constitutionality of the LHSEADA has been questioned in this litigation, Rec. Doc. 14.  The Attorney General has not intervened in this case.  In the state court litigation, Plaintiff moved for partial summary judgment regarding the unconstitutionality of the Act.  See Rec. Doc. 13-5 (Plaintiff's state-court memorandum in support of his motion for partial summary judgment).

assume vicarious liability of Guardsmen in Title 32 status scenarios. In other words, Plaintiff avers that in such a hybrid-status case as this one, the proper FTCA analysis is not the traditional question of how a private defendant would be treated under like circumstances, but rather what liability the State would have had but for the financial relief provided by the United States by virtue of Title 32 status. Plaintiff argues that because the proper analysis is whether *the State* would be immune under like circumstances, and because the statute is unconstitutional, Defendant is not immunized from liability by the LHSEADA.

Although Defendant has not substantively responded to Plaintiff's arguments about the unconstitutionality of LHSEADA, Defendant asserts that the court need not reach the constitutionality question. Defendant contends that Plaintiff's arguments hinge on the question of whether this statute is unconstitutional because it has allowed the State to completely immunize itself, in violation of the constitution. Defendant asserts that in an action proceeding under the FTCA, the central question is not how the federal government acting as the state is treated, but rather, how a private citizen treated under the law. Defendant contends that because this case does not directly

implicate the immunity of the State, the question of the constitutionality of LHSEADA is not squarely before this Court and, therefore, need not be reached.

**LEGAL STANDARD**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" <u>Krim v. pcOrder.com, Inc.</u>, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. <u>Randall D. Wolcott, M.D., P.A. v. Sebelius</u>, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). <u>United States v. City of New Orleans</u>, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that

15

the defendant is liable for the misconduct alleged." <u>Id.</u>   A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).   The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678.

## DISCUSSION

"The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." <u>United States v. Orleans</u>, 425 U.S. 807, 813 (1976).   It is undisputed in this case that the Guard members who allegedly worked in the vicinity of the location of Plaintiff's accident were in Title 32 federal status,[23] such that they are employees of the federal government for whom Defendant could be liable under the FTCA.   28 U.S.C. § 2671 ("'Employee of the government' includes . . . members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32 . . .

---

[23] <u>See</u> Rec. Doc. 11-2, at 2 (stating that Army records reflect that Guardsmen were in such status); Rec. Doc. 11-2, at 5 (stating that it is uncontested that members of the Guard were in Title 32 status in November 2005).

.") .   Because Plaintiff has sued Defendant under the FTCA, Louisiana law applies to govern Defendant's potential liability. See Alexander v. United States, 605 F.2d 828, 832 (5th Cir. 1979) ("[L]iability under the FTCA is governed by state law . . . ."); In re Supreme Beef Processors, Inc., 468 F.3d 248, 252 (5th Cir. 2006) ("The FTCA allows a plaintiff to pursue tort actions against the federal government, and it holds the government liable as if it were a defendant in state court, subject to strict limitations.")

In applying Louisiana law to an FTCA claim such as this one, the Court must consider whether a private person in like circumstances would be liable under state law.   In re Fema Trailer Formaldehyde Prods. Liab. Litig., 719 F. Supp. 2d 677, 684 (E.D. La. 2010) ("Therefore, if a private person under 'like circumstances' would be shielded from liability pursuant to a state statute, the strict construction required by the Supreme Court dictates that lower courts decline to exercise subject-matter jurisdiction.").   Accordingly, Defendant may "raise any and all defenses that would potentially be available to a private citizen or entity under state law."   Id.   The

LHSEADA is such a state law defense,[24] and it is the sole basis for Defendant's motion to dismiss for lack of subject matter jurisdiction.  The Act reads, in pertinent part:

> Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents' employees or *representatives of any of them engaged in any* homeland security and *emergency preparedness activities*, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.

LA. REV. STAT. § 29:735(A)(1) (emphasis added).  Thus, Defendant argues that the Guardsmen in Title 32 federal status were "representatives" of the State, and that their debris-removal

---

[24] Court decisions within this circuit have applied the Act in FTCA tort cases concerning Guardsmen performing disaster-recovery work in the aftermath of natural disasters.  See Lumpkin v. Lanfair, No. 09-6248, 2010 WL 3825427 (E.D. La. Sept. 23, 2010) (Hurricane Gustav); Lemoine v. United States, No. 07-8478, 2009 WL 2496561 (E.D. La. Aug. 13, 2009) (Hurricane Katrina); see also Robin v. United States, No. 04-2230, 2006 WL 2038169 (E.D. La. Jul. 17, 2006) (agent for United States Wildlife and Fisheries following Tropical Storm Isadore).

activities were "emergency preparedness activities," such that Defendant is immunized from tort liability under the Act.

Defendant proposes a three-part test for invocation of the Act: (1) that the Guardsmen were agents or representatives of the State; (2) that they were engaged in emergency preparedness activities; and (3) that they had complied with regulations of the Act.[25] The Court turns to the second element of this proposed test, which is dispositive of the instant motion.[26] Unless the Guardsmen for which Defendant may be responsible under the FTCA were engaged in "emergency preparedness activities" that were the cause of the accident, Defendant has no possible claim to immunity under the Act. In general, emergency preparedness is defined as "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters." La. Rev. Stat. § 29:732(4). Debris removal, the primary activity the Defendant alleges the Guard was participating in, would constitute such activity.[27] Likewise, courts have also found that the following

_____

[25] Rec. Doc.40-2, at 14-15.

[26] Because it is uncontested that Defendant was operating in Title 32 status and because Plaintiff has not asserted that Defendant was engaged in willful misconduct, the Court finds that factor one and three are met in this case.

[27] See Castille v. Lafayette City-Parish Consol. Gov't, 2004-1569, p.3 (La. App. 3d Cir. 3/2/05); 896 So. 2d 1261, 1263 (clearing of roadways of debris deposited by hurricane involved emergency preparedness activities, such that the Act applied).

constitute "emergency preparedness" activities: checking culverts and drainage structures for debris, transporting relief supplies, and hauling asphalt. <u>Fryoux v. Tensas Basin Levee Dist.</u>, 12-997 (La. App. 3 Cir. 2/6/13); 2013 WL 440129, at \*2-3; <u>Lumpkin</u>, 2010 WL 3825427 at \*5; <u>Lemoine</u>, 2009 WL 2496956 at \*3. While true that Plaintiff generally bears the burden of demonstrating the existence of jurisdiction, <u>Randall D. Wolcott, M.D., P.A.</u>, 635 F.3d at 762, under Louisiana law, a defendant has the burden of proving its entitlement to an affirmative defense. <u>Banks v. Parish of Jefferson</u>, 08-CA-27, p.9 (La. App. 5th Cir. 6/19/08); 990 So. 2d 26, 30. The LHSEADA immunity defense is such an affirmative defense. <u>Id.</u> Thus, Defendant must point to evidence establishing the applicability of the immunity to this case. Immunity statutes such as this one are strictly construed against the party claiming immunity. <u>Id.</u>

In support of its assertion that the Guard was performing emergency preparedness activities in the vicinity of Plaintiff's accident on the date in question, Defendant submits the following evidence. First, Defendant points to various Fragmentary Orders ("FRAGO") produced by the Guard during November 2005. For example, FRAGO 05-09, issued on November 5, 2005, and labeled "Emergency Preparedness," states, in pertinent part, that the

20

205th and the 225th Engineering Group shall,

> Install culverts on 40 Arpent Canal. Continue clearing
> and grubbing on canal from pump station #5, eastward….
> Raise height of levee from Violet Canal to pump station
> #5.***Repair road on top of levee from Pump Station #5 to
> intersection of Violet Canal and St. Bernard Highway.
> Prepare this road for a high volume of dump truck
> traffic. Use a dozer to push trash along Judge Perez
> Highway at Pump Station #5 to one side of site. This area
> will be used to stockpile fill for raising the levee.[28]

Defendant also notes that FRAGO 27 orders the Engineering group to
"clear and grub"[29] the Arpent Canal levee from Pump Station #5
eastward.[30] Likewise, Defendant points to multiple orders issued on
November 9, 2005, which indicate that the Guard was "conduct[ing]
debris removal" in the area of the accident site and "provid[ing]
overwatch and repair of key levee sites."[31] Furthermore, orders

---

[28] Rec. Doc. 58-1, at 1-2.

[29] "Grub" is defined as "clear[ing] by digging up roots and stumps" or "to dig up by or as if by the roots." Merriam-Webster's Collegiate Dictionary 515 (10th ed. 1999).

[30] Rec. Doc. 58-1, at 10-11.

[31] Rec. Doc. Rec. Doc. 58-1, at 14-18, 21, 23, 28.

21

issued from November 11, 2005 through the date of Plaintiff's accident also states that the Guard continued to perform "levee repair" and "clearing and grubbing" in the area in question.[32]

Second, Defendant points to Col. Mouton's declaration and deposition testimony. Defendant notes that Col. Mouton testified that the Guard's mission post-Katrina "was to respond to the disaster, to make roads accessible, to mitigate hazards[,]" and that in order to do that the Guard "moved a tremendous amount of debris around, [] moved a tremendous amount of dirt around because that's the functionality of [the Guard]."[33] Furthermore, Col. Mouton testified that debris removal was not limited to the streets, but also constituted removing debris from the levees, water structures, and repairing gaps in levees.[34] Third, Defendant notes that Mr. Rahaim testified that debris removal occurred around the Arpent Canal.[35]

Lastly, Defendant points to Mr. Turner's testimony, in which Mr. Turner explained that "the [Guard] was doing a whole lot of things in St. Bernard [post-Katrina]. And primarily what they were doing for the Levee District was assisting us . . . in clearing the

---

[32] Rec. Doc. 58-1, at 30 -42.

[33] Rec. Doc. 40-5, at 12-13.

[34] Rec. Doc. 40-5, at 17.

[35] Rec. Doc. 40-6, at 17.

debris off the levees. And, and in the case of the nonfederal levee,[36] ultimately I think they provided assistance in raising that levee up to, you know, a couple feet higher than what it was prior to Katrina."[37] Mr. Turner also testified that the  levee repair work that was done at the Arpent Canal was a direct result of Hurricane Katrina.[38] In particular, Mr. Robert Turner explains that the parish sought to have the nonfederal levees raised because the federal system was "totally degraded" and the nonfederal system was the only thing providing protection.[39] Mr. Turner noted that the federal system was degraded as a result of Hurricane Katrina.[40]

On whole, the evidence proffered by the Defendant makes it clear to the Court that during November 2005, the Guard was engaged in debris removal and levee repair near the site of Plaintiff's accident. All activities, which were a direct result of Hurricane Katrina, constitute "emergency preparedness" activities for the purposes of LHSEADA. To the extent that Plaintiff has tried to distinguish these activities by arguing that raising the nonfederal levee is distinct from repairing the levee, the Court looks to Mr.

---

[36] The levee on the north side of the Arpent Canal, which is the closest levee to the accident site, is a nonfederal levee.

[37] Rec. Doc. 40-7, at 5.

[38] Rec. Doc. 40-7, at 6-7.

[39] Rec. Doc. 40-7, at 7.

[40] Rec. Doc. 40-7, at 7.

23

Turner's testimony, noting that the levees were only raised due to the damage caused by Katrina and that, *but for Katrina*, none of the levee activity would have taken place.[41] Furthermore, to the extent that Plaintiff has argued that there is not enough temporal proximity to Katrina for the Guard's activity to qualify as "Emergency Preparedness," the Court notes that other courts have found that accidents that occurred even later than Plaintiff's accident have qualified for the immunity provisions under LHSEADA and similar statutes. <u>Estate of Martin v. United States</u>, No. 08-157, 2010 WL 2985471, at *3-4 (S.D. Miss. July 23, 2013) (applying immunity to post-Katrina accident that occurred on January 18, 2006 under similar Mississippi Statute); <u>Lemoine</u>, 2009 WL 2496561, at *2-3 (applying immunity to post-Katrina accident that occurred on November 30, 2005). Thus, the Court finds that Defendant was engaging in "emergency preparedness" activity at the time that Plaintiff's accident occurred and, as such, that Defendant is immune from liability under the FTCA.

Lastly, with respect to Plaintiff's constitutionality arguments, the Court agrees with Defendant. The precise issue that Plaintiff claims is unconstitutional, namely, the impermissible

---

[41] The Court also notes that based on the evidence in front of it would be impossible to separate the tasks of raising the levees from repairing them and clearing off debris. All of these acts occurred simultaneously over the course of November and thus, are all "emergency preparedness" activity within the context of this case.

granting of absolute immunity to the State of Louisiana, is not squarely before the Court at this time. As Plaintiff has noted, the United States and the State are separate in this action, and Plaintiff is precluded from arguing that the United States was acting on the State's behalf.[42] Furthermore, under the FTCA, the immunity analysis places the United States in the shoes of a private individual, not the State; thus, the Court finds that the specific constitutional question that Plaintiff seeks to raise is not squarely implicated here and, therefore, does not address it at this time. Accordingly,

**IT IS ORDERED** that Defendant's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

New Orleans, Louisiana this 3rd day of June, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[42] Rec. Doc. 1, at 4, ¶ XIII.